

**ORIGINAL**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAR -9 2006

CLERK, U.S. DISTRICT COURT

By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.: |
| | § | |
| BMA VENTURES, INC., and | § | **3 - 06 C V 0 4 2 7 - P** |
| WILLIAM ROBERT KEPLER | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

The Securities and Exchange Commission ("Commission") files this suit against BMA Ventures, Inc., and William Robert Kepler and would respectfully show the Court as follows:

## SUMMARY

1.    This is a scalping case. "Scalping" refers to the illegal practice of recommending that others purchase a security while secretly selling the same security contrary to the recommendation.

2.    William Robert Kepler ("Kepler"), acting though his wholly owned company BMA Ventures, Inc. ("BMA"), between January 2004 and March 2005 faxed thousands of newsletters to potential investors touting the securities of twenty-six issuers. In most cases, the newsletters, each featuring a single issuer, were distributed on multiple dates over a period of several days to several weeks. In return for creating and disseminating the newsletters, BMA received stock of the featured issuer, which Kepler sold contemporaneously with or shortly after the distribution of the newsletter. Despite the recurring pattern of selling the securities BMA received for its services, each newsletter failed to disclose that Kepler was in the process of



selling, or intended to sell soon thereafter, the securities BMA received for its services. Through this scheme, Kepler received gross proceeds of over $1.9 million over approximately fifteen months.

3.      The Commission, in the interest of protecting the public from any further unscrupulous activity, brings this action against the Defendants seeking permanent injunctive relief, disgorgement of all illicit profits and benefits Defendants received plus accrued prejudgment interest, civil monetary penalties and the entry of a penny-stock bar to prevent Defendants from engaging in similar conduct in the future.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to § 22(a) of the Securities Act of 1933 (the "Securities Act") and § 27 of the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this Complaint. Venue is proper because many of the transactions, acts, practices and courses of business described below occurred within the jurisdiction of the Northern District of Texas.

## DEFENDANTS

5.      William Robert Kepler, age 35, resides in Dallas, Texas, and is the president and sole owner of BMA. Before founding BMA in 2003, Kepler worked in the music and entertainment industry. Kepler currently distributes reports on small issuers through a member-only website.

6.      BMA Ventures, Inc., maintains its principal place of business at 13330 Noel Road, #1328, Dallas, Texas, and was formed as a Texas corporation in April 2003. Kepler is the

corporation's sole shareholder and officer. In December 2003, BMA applied for Commission registration as an investment adviser, and its registration became effective on January 2, 2004. Although BMA is registered with the Commission as an investment adviser, its operations are limited to preparing and distributing tout sheets on microcap companies. It has no traditional investment-advisory clients and no assets under management.

## FACTUAL BACKGROUND

7.       Kepler holds a degree in radio and television broadcasting, and, until 2003, he primarily worked in the music and entertainment industry. Through his work at a small publicly traded music company, Kepler learned of "investor-awareness campaigns" designed to bring small companies to the attention of investors and, in April 2003, formed BMA to enter this business. Kepler has always been the sole officer, director, and shareholder of BMA. Since its inception, BMA's only business has been producing and disseminating positive newsletters on small issuers in exchange for stock.

## BMA AND KEPLER'S SCALPING ACTIVITIES

8.       Acting through BMA, Kepler contracted with various consultants who owned shares in multiple Pink Sheets and OTC Bulletin Board companies to prepare and distribute investor-awareness newsletters in exchange for stock of the companies. Between January 2004 and March 2005, Kepler created and distributed positive, one-page newsletters on twenty-six such companies. The purpose of the newsletters was to increase the price and trading volume of the featured companies' stock. Kepler adopted various titles for the newsletters, interchangeably using "OTC Premier," "Inside Wall St.," and "OTC Marquee."

9.       For each newsletter, Kepler gathered information about the featured company from the Internet and directly from the company and then prepared the newsletter to promote,

among other things, the company's market competitiveness, projected revenue, and growth potential. Some of the newsletters also touted BMA's successful stock-picking record by referring to earlier newsletters that featured companies whose stock had later increased in value. To further induce readers to purchase the featured stocks, over half of the newsletters included the words "Rating: STRONG" in bold type. In the typical case, Kepler sent a final draft of the newsletter to the management of the featured company for review and approval before publication.    Kepler sent the newsletters to a service that used "blast-fax" technology to disseminate the newsletters to thousands of potential investors. In the vast majority of cases, newsletters featuring a single issuer were faxed in bulk on multiple dates over a period ranging from several days to several weeks.

10.    Each newsletter contained a hard-to-read disclaimer in small print that BMA received compensation for the newsletter in the form of a specified amount of stock of the subject issuer from a third-party consultant. None of the disclaimers, however, disclosed that BMA intended to sell or sold the stock during or immediately after a newsletter campaign, as was its consistent practice. While they varied in minor details, each of the newsletters contained a disclaimer, in pertinent part, substantially like this one from the newsletter for IR Biosciences Holdings, Inc.:

> BMA Ventures, Inc. has been hired by a third party consultant, and is contracted to receive $102,500.00 (250,000 shares of IRBO) for the publication and circulation of this newsletter #413. BMA Ventures, Inc. and its affiliates or officers may buy, hold, or sell shares of common stock of IRBO, in the open market without notice.

The statement that BMA "may buy, hold, or sell" its shares simply restated virtually every possible course of action that BMA could take with respect to its shares, without disclosing that



BMA intended to sell—or was already selling—shares in conjunction with a newsletter campaign.

11.     Kepler and BMA touted twenty-six issuers over a fifteen-month period and realized in excess of $1,900,000 in sales proceeds from selling the shares of the companies that the newsletters were promoting.  With one exception, the stocks touted were "penny stocks" as defined in Section 3(a)(51) of the Exchange Act.  BMA and Kepler touted the following issuers and realized proceeds from the sale of shares of the touted issuers as follows:

> a.     Airbee Wireless:  On March 2, 2004, BMA distributed a newsletter touting Airbee Wireless, Inc. and on the same day received shares of Airbee Wireless for its services.  The newsletter did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between March 8 and March 11, 2004, Kepler sold the securities received of Airbee Wireless and realized gross proceeds from the sale of the shares in excess of $30,416.

> b.     Beverly Film Studios, Inc.:  On January 23, 2004, BMA received shares in Beverly Hills Film Studios, Inc.   On January 27, 28 and 29, BMA distributed newsletters touting Beverly Hills Film Studios.   The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between February 2 and February 6, 2004, Kepler sold the securities received of Beverly Hills Film Studios and realized gross proceeds from the sale of the shares in excess of $23,317.

> c.     Cipher Multimedia, Inc.:  On March 1, 2004, and again on April 22, 2004, BMA received shares of Cipher Multimedia, Inc.  On March 9, March 15,

March 16, March 22, March 28, April 28, April 29 and May 4, 2004, BMA distributed newsletters touting Cipher Multimedia. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between March 18 and March 23, 2004, and between May 3 and May 12, 2004, Kepler sold the securities received of Cipher Multimedia and realized gross proceeds from the sale of the shares in excess of $169,958.

d.   Certified Services, Inc.:   On July 2, 2004, BMA received shares of Certified Services, Inc. On July 19, July 20 and July 21, BMA distributed newsletters touting Certified Services. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between July 12 and July 13, 2004, Kepler sold the shares received of Certified Services and realized gross proceeds from the sale of the shares in excess of $39,793.

e.   Communication Synergy Technologies, Inc.:   On April 22, 2004, BMA received shares of Communication Synergy Technologies, Inc.   On April 27, April 28 and April 29, 2004, BMA distributed newsletters touting Communication Synergy. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between April 30 and May 7, 2004, Kepler sold the shares received of Communication Synergy and realized gross proceeds from the sale of the shares in excess of $66,051.

f.     EZ2 Companies, Inc.:  On October 29, 2004, BMA received shares of EZ2 Companies, Inc.  Between November 1 and December 9, 2004, BMA distributed numerous newsletters touting EZ2 Companies.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer or that Kepler had sold shares of EZ2 Companies on November 1, November 4, November 5, November 8, November 9, November 10, November 12, November 17, November 18, November 18, Nobember 19, November 22 through November 24, November 26, November 29 through December 2, December 7 through December 9, 2004.  Kepler also sold shares of EZ2 Companies on December 13, 2004.  Kepler realized gross proceeds from the sale of the EZ2 Companies shares in excess of $123,853.

g.     E-Mobile Information Technologies, Inc.:  On August 23, 2004, BMA received shares of E-Mobile Information Technologies, Inc.  Between August 1, 2004, and September 9, 2004, BMA distributed numerous newsletters touting E-Mobile Information Technologies.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between September 2, 2004, and September 27, 2004, Kepler sold the shares received of E-Mobile Information Technologies and realized gross proceeds from the sale of the shares in excess of $344,888.

h.     EnerTeck Corporation:  On July 23, 2004, BMA received shares of EnerTeck Corporation.  On July 19, August 3, August 4, August 5, August 6 and August 9, 2004, BMA distributed numerous newsletters touting

EnerTeck.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between August 6 and August 13, 2004, Kepler sold the shares received of EnerTeck and realized gross proceeds from the sale of the shares in excess of $60,958.

i.    Headliners Entertainment Group, Inc.:  On June 3, 2004, BMA received shares of Headliners Entertainment Group, Inc.  On information and belief, BMA distributed numerous newsletters that touted Headliners Entertainment Group.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between August 6 and August 13, 2004, Kepler sold the shares received of Headliners Entertainment Group and realized proceeds from the sale of the shares in excess of $8,689.

j.    IR Biosciences Holdings, Inc.:  On March 30, 2004, BMA received shares of IR Biosciences Holdings, Inc.  On April 13, April 14, April 15, April 19 and April 21, 2004, BMA distributed numerous newsletters touting IR Biosciences.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between April 15 and April 26, 2004, Kepler sold the shares received of IR Biosciences and realized proceeds from the sale of the shares in excess of $89,919.

k.    Integrated Software Development, Ltd.:  On June 17, 2004, and on July 12, 2004, BMA received shares of Integrated Software Development, Ltd.  On June 24, June 28, July 14, July 15, July 16 and July 17, 2004, BMA distributed    numerous    newsletters    touting    Integrated    Software

Development. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between June 17 and July 1, 2004 and between July 19 and August 4, 2004, Kepler sold the shares received of Integrated Software Development and realized proceeds from the sale of the shares in excess of $85,881.

l.    Interage, Ltd.: On July 23, 2005, BMA received shares of Interage, Ltd. On July 28, 2004, and on September 27, 2004, BMA distributed newsletters touting Interage. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between July 30 and August 2, 2004, Kepler sold the shares received of Interage and realized proceeds from the sale of the shares in excess of $200.

m.    J.A.B. International, Inc.: On June 3, 2004, BMA received shares of J.A.B. International, Inc. On information and belief, BMA distributed newsletters touting J.A.B. International. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. On July 21, 2004, Kepler sold the shares received of J.A.B. International and realized proceeds from the sale of the shares in excess of $294.

n.    Leisure Works, Inc.: On March 3, 3004, BMA received shares of Leisure Works, Inc. On March 22, March 23, March 24, March 25 and March 29, 2004, BMA distributed numerous newsletters touting Leisure Works. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between March 25, 2004, and April 1, 2004,



Kepler sold the shares received of Leisure Works and realized proceeds from the sale of the shares in excess of $47,234.

o.   <u>Limelight Media Group, Inc.</u>:   On August 6, August 10 and August 13, 2004, BMA received shares of Limelight Media Group, Inc.  On August 18, August 19, August 20, August 23 and August 24, 2004, BMA distributed numerous newsletters that touted Limelight Media Group.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between August 19 and August 31, 2004, Kepler sold the shares received of Limelight Media Group and realized proceeds from the sale of the shares in excess of $124,046.

p.   <u>Motion DNA Corp.</u>:   On February 20, 2004, BMA received shares of Motion DNA Corp.  Between February 23 and February 27, 2004, BMA distributed numerous newsletters touting Motion DNA.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between February 27, 2004, and March 3, 2004, Kepler sold the shares received of Motion DNA and realized proceeds from the sale of the shares in excess of $57,310.

q.   <u>N.R.E. Entertainment, Inc.</u>:   On February 3, 2004, BMA received shares of N.R.E. Entertainment, Inc.  On February 6, 2004, BMA distributed newsletters touting N.R.E. Entertainment.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between February 12, 2004, and March 3, 2004, Kepler sold the

shares received of N.R.E. Entertainment and realized proceeds from the sale of the shares in excess of $51,027.

r.  Pacific Gold Corp.: On January 15 and January 16, 2004, BMA received shares of Pacific Gold Corp. On January 20, 2004, BMA distributed newsletters touting Pacific Gold. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between January 23 and January 27, 2004, Kepler sold the shares received of Pacific Gold and realized proceeds from the sale of the shares in excess of $28,570.

s.  POW Entertainment, Inc.: On February 18, 2005, BMA received shares of POW Entertainment, Inc. On February 22 and February 28, 2005, and on March 1 and March 2, 2005, BMA distributed numerous newsletters touting POW Entertainment. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between February 24, 2005, and March 31, 2005, Kepler sold the shares received of POW Entertainment and realized proceeds from the sale of the shares in excess of $48,606.

t.  Quantech Electronics Corp.: On August 13, August 27 and September 14, 2004, BMA received shares of Quantech Electronics Corp. On August 17, August 18, August 19, August 23, August 24 and August 31, 2004, BMA distributed newsletters touting Quantech Electronics. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between August 13, 2004, and September 30, 2004, Kepler sold



the shares received of Quantech Electronics and realized proceeds from the sale of the shares in excess of $45,707.

u.    QI Systems, Inc.:   On May 5 and May 12, 2004, BMA received shares of QI Systems, Inc.  On May 10, May 11, May 12, May 17, May 20, May 21 and May 24, 2004, BMA distributed numerous newsletters touting QI Systems.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between May 10 and May 27, 2004, Kepler sold the shares received of QI Systems and realized proceeds from the sale of the shares in excess of $80,633.

v.    Stream Communications Network and Media, Inc.:   On July 14, 2004, BMA received shares of Stream Communications Network and Media, Inc.  On information and belief, BMA distributed newsletters touting Stream Communications and Network Media.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  Between July 23 and July 28, 2004, Kepler sold the shares received of Stream Communications Network and Media and realized proceeds from the sale of the shares in excess of $65,663.

w.    Strategy International Insurance Group, Inc.:   On information and belief, BMA received shares of Strategy International Insurance Group, Inc.  On November 29, 2004, and on December 1, December 6, December 9 and December 14, 2004, BMA distributed numerous newsletters touting Strategy International Insurance Group.  The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer.  On



December 1, December 3, December 6, December 10, December 13 and December 16, 2004, Kepler sold the shares received of Strategy International Insurance Group and realized proceeds from the sale of the shares in excess of $76,106.

x.     <u>Sweet Success Enterprises, Inc.</u>: On June 17, 2004, BMA received shares of Sweet Success Enterprises, Inc. On June 29 and June 30, 2004, and on July 1, July 7 and July 8, 2004, BMA distributed numerous newsletters touting Sweet Success Enterprises. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between July 6 and July 14, 2004, Kepler sold the shares received of Sweet Success Enterprises and realized proceeds from the sale of the shares in excess of $46,517.

y.     <u>Warp Technology Holdings, Inc.</u>: On May 10, 2004, and June 2, 2004, BMA received shares of Warp Technology Holdings, Inc. On May 10, May 12, May 13, May 17, May 18, May 19 and June 8, 2004, BMA distributed numerous newsletters touting Warp Technology Holdings. The newsletters did not disclose that BMA or Kepler intended to sell the shares received of the issuer. Between May 14 and June 8, 2004, Kepler sold the shares received of Warp Technology Holdings and realized proceeds from the sale of the shares in excess of $143,291.

z.     <u>XRG, Inc.</u>: On June 7, 2004, BMA received shares of XRG, Inc. On June 9, June 10, June 14 and June 15, 2004, BMA distributed numerous newsletters touting XRG. The newsletters did not disclose that BMA or

Kepler intended to sell the shares received of the issuer. Between June 15 and June 21, 2004, Kepler sold the shares received of XRG and realized proceeds from the sale of the shares in excess of $41,931.

## BMA'S IMPROPER REGISTRATION AS AN INVESTMENT ADVISOR

12.     Beyond its touting activities, in December 2003 BMA applied for Commission registration as an investment adviser on Form ADV, and its registration became effective on January 2, 2004. When BMA applied, however, it did not meet the eligibility requirements of Section 203A of the Advisers Act, which prohibit an investment adviser from registering with the Commission unless the adviser has at least $25 million in assets under management or is an investment adviser to a registered investment company. BMA registered under the exemption provisions of Advisers Act Rule 275.203A-2(d), which allows an otherwise ineligible investment adviser to register, if it has a reasonable expectation that it will meet the eligibility requirements within 120 days and represents in its Form ADV that it will withdraw its registration if it does not become eligible within that time. BMA has never been in the business of managing assets, nor has it ever had any assets under management. Moreover, it has never been an investment adviser to any traditional investment-adviser clientele, nor has it ever had even the slightest prospect of becoming an investment adviser to a registered investment company. When it registered with the Commission, BMA had no reasonable expectation that it would meet the eligibility requirements nor did it withdraw its registration after 120 days when it failed to become eligible, despite its representation that it would do so.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

13.     Plaintiff Commission repeats and incorporates paragraphs 1 through 12 of this Complaint by reference as if set forth *verbatim*.

14.     Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

15.     As a part of and in furtherance of their scheme, Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 12 above.

16.     Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

17.     By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate the provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**SECOND CLAIM**
**Violations of Section 17(a) of the Securities Act**

18.     Plaintiff Commission repeats and incorporates paragraphs 1 through 12 of this Complaint by reference as if set forth *verbatim*.

19.     Defendants, directly or indirectly, singly, in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have:  (a) employed devices, schemes or artifices to defraud;  (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

20.     As part of and in furtherance of this scheme, Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those statements and omissions set forth in paragraph 1 through 12 above.

21.     Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness with regard for the truth.  Defendants were also negligent in their actions regarding the representations and omissions alleged herein.

22.     By reason of the foregoing, Defendants have violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM
### BMA's Violations of Section 203A of the Investment Advisers Act

23. Plaintiff Commission repeats and incorporates paragraphs 1 through 12 of this Complaint by reference as if set forth *verbatim*.

24. Section 203A(a) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-1 *et seq.*] ("Investment Advisers Act") provides that no investment adviser that is regulated or required to be regulated as an investment adviser in the state in which it maintains its principal office and place of business shall register under Section 203, unless the adviser has not less than $25 million in assets under management or is an adviser to a registered investment company. Advisers Act Rule 275.203A-2(d) provides that the prohibition contained in Section 203A(a) of the Act does not apply to investment advisers who reasonably expect to become eligible for Commission registration within 120 days after registering and who agree to withdraw from registration if they do not meet registration requirements within 120 days.

25. When it registered with the Commission, BMA did not meet the requirements for registration under Section 203(a) of the Advisers Act, nor did it reasonably expect to become eligible to register within 120 days. At the time of its registration, BMA had no assets under management, was not an adviser to a registered investment company, and had no prospects of meeting either of these criteria. Moreover, in the 120-day period after registration, BMA made no effort to meet these criteria. Because BMA was not eligible to register under Section 203(a), it violated Section 203A when it filed the application to register.

26. By reason of the foregoing, Defendant BMA violated, and unless enjoined, will continue to violate Section 203A of the Investment Advisers Act [15 U.S.C. § 80b-3a].

**FOURTH CLAIM**
**Kepler's Aiding and Abetting**
**BMA's Violations of Section 203A of the Investment Advisers Act**

27. Plaintiff Commission repeats and incorporates paragraphs 1 through 12 and paragraphs 24 through 25 of this Complaint by reference as if set forth *verbatim*.

28. Kepler aided and abetted BMA's violations of Section 203A of the Investment Advisers Act by knowingly providing substantial assistance to BMA in making false statements to the Commission. Kepler, in his capacity as the sole officer of BMA, knew that BMA did not meet the criteria for registration under the Investment Advisers Act but signed and filed BMA's registration application with the Commission.

29. By reason of the foregoing, Defendant Kepler aided and abetted BMA's violation of and unless enjoined, will continue aid and abet violations of Section 203A of the Investment Advisers Act [15 U.S.C. § 80b-3a]

**REQUESTED RELIEF**

The Commission seeks the following relief:

30. An order of the Court permanently enjoining the Defendants, their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, [15 U.S.C. § 77q(a)] and Section 10(b) and of the Exchange Act, [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

31. An order of the Court permanently enjoining BMA, its agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future

violations of Section 203A of the Investment Advisers Act, [15 U.S.C. § 80b-3a] and an order enjoining Kepler, his agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting future violations of Section 203A of the Investment Advisers Act, [15 U.S.C. § 80b-3a].

32.     An order of the Court directing Defendants to disgorge an amount equal to the funds and benefits obtained illegally as a result of the violations alleged, plus prejudgment interest on that amount.

33.     An order of the Court directing Defendants to pay civil monetary penalties in an amount determined as appropriate by the Court pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9] for their violations of the federal securities laws as alleged herein.

34.     An order of the Court that Defendants are permanently barred from participating in an offering of any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act [17 C.F.R. 240.3a51-1] including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

35.     All further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: March 9, 2006

Harold R. Loftin, Jr.
Texas Bar No. ~~12487490~~ #12487090
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6450
(817) 978-4927 (fax)

JS 44 (Rev. 11/04)

ORIGINAL

RECEIVED

MAR 9 2006

CLERK, U.S. DISTRICT COURT

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I.(a) PLAINTIFFS

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**

BMA VENTURES, INC. and WILLIAM ROBERT KEPLER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF_____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant:   __Dallas__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Harold R. Loftin, Jr.
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-6450

ATTORNEYS (IF KNOWN)

3-06CV0427-P

### II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and Corrupt Organization |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 820 Copyrights | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | | ☐ 840 Trademark | ☒ 850 Securities Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | **LABOR** | ☐ 861 HIA (1395FF) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **PERSONAL INJURY** | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 362 Personal Injury - Med. Malpractice | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 365 Personal Injury - Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **PERSONAL PROPERTY** | | ☐ 790 Other Labor Litigation | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 370 Other Fraud | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 371 Truth in Lending | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 380 Other Personal Property Damage | | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 385 Property Damage Product Liability | | | | |

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

### VI. CAUSE OF ACTION
CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY:)

Brief Description of cause: Section 17(a) of the Securities Exchange Act of 1933 [15 U.S.C. §77q(a)], Sections 10 (b) and 21 (d)(6) of the Securities Exchange Act of 193 [15 U.S.C. §§ 78j(b) and 78u(d)(6)], Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5], and Section 203A of the Investment Advisers Act of 1940 [15 U.S.C. §80b 3a.

### VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION    ☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES   ☐ NO

### VIII. RELATED CASE(S) (See Instructions):
IF ANY    JUDGE _____    DOCKET NUMBER _____

DATE  3/9/06    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
Receipt #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____